# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAUDIO ANTONIO PALMISANO,<br><br>　　　　　　　　　　　Petitioner,<br>vs.<br><br>J. YATES, Warden, et al.,<br><br>　　　　　　　　　　　Respondents. | CASE NO. 05cv2223-LAB (POR)<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

　　　Petitioner Claudio Antonio Palmisano, a state prisoner proceeding *pro se* filed his petition for writ of habeas corpus on December 5, 2005. He contends he was forced to plead no contest to seven counts of lewd or lascivious acts upon the body of a child owing to the ineffective assistance of his counsel. He argues he was denied assistance of his counsel both at trial and on appeal, and that the prosecution and trial court committed misconduct.

　　　The petition was referred to Magistrate Judge Louisa Porter for report and recommendation pursuant to 28 U.S.C. § 636. Judge Porter issued her report and recommendation (the "R&R") on August 7, 2006, recommending denial of the writ, to which Petitioner filed objections.

## I.　Legal Standards

　　　A district court has jurisdiction to review a Magistrate Judge's report and recommendation concerning a dispositive pretrial motion. Fed. R. Civ. P. 72(b). "The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in

1 accordance with this rule." *Id.*; *see also* 28 U.S.C. § 636(b)(1)(C). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Thus, this Court must review those parts of the report and recommendation to which a party has filed a written objection. Moreover, 28 U.S.C. § 636(b)(1) does not require some lesser review by the district court when no objections are filed. *Thomas v. Arn*, 474 U.S. 140, 149–50 (1985). The Ninth Circuit has interpreted the language of 28 U.S.C. § 636(b)(1), and determined that the "statute makes it clear that the district judge must review the magistrate judge's findings and recommendations *de novo if objection is made, but not otherwise.*" *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). The construes *pro se* habeas filings liberally. *Allen v. Calderon*, 408 F.3d 1150, 1153 (9th Cir. 2005).

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this case because the Petition was filed after April 24, 1996. *Smith v. Baldwin*, 466 F.3d 805, 811 (9th Cir. 2006). AEDPA prohibits a federal court from granting a petition of a state prisoner whose claims were adjudicated on the merits in state court, unless the state court decision was contrary to clearly established federal law, or involved an unreasonable application of the facts to such law. Specifically, a federal court can grant habeas relief where a state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). AEDPA also requires deference to the state court's findings of fact, presuming them correct unless the petitioner rebuts them by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Alleged errors in the application of state law are not cognizable in federal habeas corpus proceedings. *Little v. Crawford*, 449 F.3d 1075, 1082 n.6 (9th Cir. 2006). Under AEDPA, only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied. *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003). "The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and

limited. Federal courts are not forums in which to relitigate state trials." *Brecht v. Abrahamson*, 507 U.S. 619, 633 (1993).

## II.     Petitioner's Objections

Petitioner took the unusual step of writing his objections into his copy of the R&R and including suggested edits. Nevertheless, the Court has done its best to construe Petitioner's objections liberally. *Allen v. Calderon*, 408 F.3d 1150, 1153 (9th Cir. 2005). In many cases, Petitioner's objections consist merely of suggested rewordings of the R&R to change the result. (*See, e.g.*, Obj. at 14:6–7 (altering "was not deficient" to "was deficient" and "nor did it result in Petitioner entering a plea" to "and resulted in Petitioner entering a plea").) These are generalized objections to the result, not specific objections, and therefore do not require a complete *de novo* review. *Player v. Salas*, 2007 WL 935100, slip op. at *2 (S.D.Cal. March 22, 2007); *Lynch v. Schriro*, 2007 WL 865369, slip op. at *3 (D.Ariz. March 20, 2007). *Cf. United States v. State of Wash.*, 626 F. Supp. 1405, 1492 (D.C.Wash. 1985) (holding certain objections to a special master's report and recommendation "too general to be valid").

Petitioner did not object to the R&R's findings of fact. The Court therefore **ADOPTS** this portion of the R&R.

Petitioner did, however, make certain specific legal arguments the Court construes as objections. These stem from a "controlled telephone call," on December 18, 2001, supervised and recorded by police, in which Petitioner's ex-wife called him and Petitioner admitted to sexually abusing their children. (R&R at 6:12–14.) Petitioner contends this call violated his Fourth Amendment right not to be subjected to unreasonable searches and seizures; his Fifth Amendment right not to be compelled to incriminate himself, and his Sixth Amendment rights to assistance of counsel. Petitioner's Fifth Amendment objections, insofar as they relate to suppression of evidence, are more precisely described as based on the Fourteenth Amendment. *Haynes v. Washington*, 373 U.S. 503, 515, 83 S.Ct. 1336, 1344 (1963) (holding that the Fourteenth Amendment requires the suppression of statements obtained by "techniques and methods offensive to due process"). Although he raised some generalized complaints about the performance of his counsel at the trial and appellate phases, his objections focus on his counsel's failure to have the telephone call suppressed. Likewise,

his complaints about prosecutorial misconduct stem from the police having arranged this call, and the prosecutor's proffering of it. His complaints about the trial court pertain to his counsel's alleged ineffectiveness in failing to have evidence of the phone call suppressed, and the court's failure to suppress this evidence, which he calls plain error. Thus, to the extent Petitioner's arguments concerning the legality and admissibility of the telephone call fail, his entire claim fails.

### A. Fourth Amendment

Petitioner raises only cursory objections based on the Fourth Amendment. (Obj. at 10:15–23, 14:10–17.) He bases this objection both on his state law rights under Cal. Penal Code § 629.22 and on federal law. The R&R correctly concluded that because of the law enforcement exception provided in Cal. Penal Code § 633, the police's listening in on or recording the conversation between Petitioner and his ex-wife — with his ex-wife's knowledge and consent — did not violate state law as Petitioner now argues. In addition, § 633 specifies that evidence is not inadmissible because it was obtained in this manner. In any case, as noted above, federal habeas cannot be granted based on errors in the application of state law.

Petitioner has contended his ex-wife was acting as a government agent when she allowed police to listen to the call with him, which they recorded. (Obj. at 10:19–21.) Even accepting this as true, police recording of this conversation did not violate the Fourth Amendment. The Fourth Amendment affords no protection to Petitioner's misplaced belief that his ex-wife, to whom he confided his wrongdoing, would not reveal it. *Hoffa v. United States*, 385 U.S. 293, 302 (1966). Similarly, his Fourth Amendment rights were not violated when police simultaneously listened to and recorded the conversation. *United States. v. White*, 401 U.S. 745, 751 (1971) ("If the conduct and revelations of an agent operating without electronic equipment do not invade the defendant's constitutionally justifiable expectations of privacy, neither does a simultaneous recording of the same conversations made by the agent or by others from transmissions received from the agent to whom the defendant is talking and whose trustworthiness the defendant necessarily risks.")

### B. Sixth Amendment

In addition to his ineffective assistance of counsel claims, Petitioner objects that his Sixth Amendment rights were violated when the phone call, initiated by the government, created a situation

where he made statements outside his counsel's presence. (Obj. at 10:22–27.) The problem with this claim is that Petitioner has not alleged the phone call took place after charges were initiated. Indeed, bearing in mind the phone call took place on December 18, 2001 and Petitioner pleaded guilty on April 2, 2003, it seems highly likely charges had not been initiated. Plaintiff does not contend he was represented by counsel at all during this time. Petitioner's objection is therefore without merit, because the Sixth Amendment right to counsel does not attach until formal charges are initiated. *Michigan v. Harvey*, 494 U.S. 344, 353 (1990) (citation omitted).

### C.    Fifth and Fourteenth Amendment

While Petitioner was unaware his statements to his wife were being overheard by police and the call was being recorded, he has made no factual allegations of any kind that would tend to show he was forced to talk with her or to say the things he said. Petitioner bases his arguments solely on the fact that his wife was co-opted by police.

The Fifth Amendment provides that no person shall be "compelled in any criminal case to be a witness against himself." U.S. Const, Am. 5. As a general matter, a defendant's relevant, voluntary out-of-court statements are admissible against him. *Clark*, 331 F.2d at 1072; Fed. R. Evid. 801(d)(2). Petitioner cites various Supreme Court precedents in which he attempts to show that the telephone conversation is inadmissible because he was not given the warnings required under *Miranda v. Arizona*, 382 U.S. 436 (1966) and did not waive his *Miranda* rights. He also refers generally to his Fifth Amendment right to remain silent, citing a large number of cases. (*See generally* Obj. at 10:15–26, 11:27–28, 15–18.) Petitioner's objections focus solely on the fact that government agents were involved. He has not alleged he was in custody at the time he made his statements and they were not (as far as he knew) made to police or as part of government interrogation. Furthermore, there is no suggestion of duress or coercion, or that Petitioner's admissions were anything but voluntary. It seems clear he did not realize the police were listening, but at the same time, it seems equally clear he was not compelled to speak.

Even accepting that Petitioner's ex-wife was a government agent at the point the phone call was made, police use of informants or undercover agents to question a suspect does not implicate *Miranda v. Arizona* or violate the Fifth Amendment. *Illinois v. Perkins*, 496 U.S. 292, 296–97 (1990).

1   "The warning mandated by *Miranda* was meant to preserve the privilege during 'incommunicado
2   interrogation of individuals in a police-dominated atmosphere.'" *Id.* (quoting *Miranda*, 384 U.S. at
3   445.) Where a suspect speaks freely with someone he assumes is not an officer, there is no danger of
4   coerced interrogation. 496 U.S. at 296–97. "Ploys to mislead a suspect or lull him into a false sense
5   of security that do not rise to the level of compulsion or coercion to speak" do not violate the
6   Constitution. *Id.* at 297.

7   Petitioner has cited *Arizona v. Fulminante*, 499 U.S. 279 (1991) in support of his contention
8   that any statement made in response to interrogation by an undercover government informant is
9   necessarily coerced. However, *Fulminante* dealt with a situation where a defendant was subject to
10  credible threats of violence and was offered protection only if he confessed. *Id.* at 286–7. Even so,
11  the Court said, the question was a close one. *Fulminante* does not, as Petitioner argues, require
12  exclusion of all statements made in response by questions posed by government informants.

13  The cases Petitioner cites are inapposite, because they relate to situations where defendants
14  were questioned while in custody or by people they knew to be government agents, or where
15  defendants were subject to threats or other duress.

16  The situation here is analogous to that in *McElvain v. Lewis*, 283 F. Supp.2d 1104, 1123
17  (C.D.Cal. 2003). There, a rape victim called the defendant on the phone and, through guile, induced
18  him to confess. With her permission, police were recording the conversation. The court, noting that
19  the defendant was not required to talk to the victim and could have hung up the telephone at any time,
20  concluded the out-of-court statement was admissible and the defendant's counsel was not deficient
21  in failing to file a motion to suppress. *Id.* at 1124. For the same reasons, Petitioner's objections on
22  Fifth and Fourteenth Amendment grounds are unavailing.
23  / / /
24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

### III. Conclusion and Order

For these reasons, Petitioner's objections are **OVERRULED**. The R&R is **ADOPTED** and the writ of habeas corpus is **DENIED**.

**IT IS SO ORDERED**.

DATED: August 31, 2007

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge